CASE 97.—ACTION BY NOEL GAINES AGAINST THE KENTUCKY JOURNAL PUBLISHING COMPANY FOR LIBEL.—May 6, 1908.

## Kentucky Journal Publishing Co. v. Gaines.

Appeal from Anderson Circuit Court.

Judgment for plaintiff and defendant appeals.— Reversed.

1.  Judges—Disqualification — Bias—Objections—Sufficiency.—In libel for charging that plaintiff published a forged letter, defendant moved that the regular judge vacate the bench and allow a special judge to preside, and filed an affidavit to support the motion, stating that the regular judge could not afford defendant an impartial trial, because he had openly stated his belief that the letter defendant claimed was forged was genuine, and had been in frequent communication with the plaintiff concerning its publication in plaintiff's paper, out of which the alleged libelous publication herein arose, and was politically antagonistic to defendant, and had political bias and enmity toward it, and because he had personally taken part in a recent political campaign out of which this suit arose and made speeches for the candidate whom defendant opposed, and that the campaign was one of great bitterness, and the judge had become so prejudiced against defendant that he could not hear the case impartially. Ky. St. 1903, section 968, provides that if either party shall file his affidavit that the judge will not afford him a fair and impartial trial, or will not impartially decide an application for change of venue, the

parties may by agreement select an attorney to preside. Held, that under the rule requiring the affidavit to state the facts necessary to show that the trial judge will not afford the litigant an impartial trial defendant's affidavit was sufficient, and the trial judge erred in refusing to vacate the bench.

2.   Same.—Under Ky. St. 1903, section 968, it is only necessary that the affidavit allege such facts which, if true, show that the trial judge will not, or may not, afford the litigant an impartial trial.

3.   Appeal and Error—Harmless Error.—When a litigant files an affidavit requesting a change of venue or of judges, and states therein sufficient facts to entitle him to the relief under the statute, the fact that the record does not in fact show any subsequently occurring error prejudicial to the complaining party does not excuse the trial court's refusal to vacate.

4.   Constitutional Law—Right to Justice—Foundation of Doctrine. —It is of the utmost importance, not only that every person should have a fair and impartial trial, but should have no just grounds of suspicion that he has not had such a trial, and to this end an impartial jury and an unbiased judge are absolutely essential.

LEWIS M'QUOWN and JAS. ANDREW SCOTT for appellant.

JOHN W. RAY and GEO. A. WILLIAMS for appellee.

OPINION OF THE COURT BY JUDGE BARKER—Reversing.

The appellee, Noel Gaines, instituted this action in the Anderson circuit court against appellant, Kentucky Journal Publishing Company, to recover damages for an alleged libelous publication concerning him, which, in part, is as follows:

"Gaines confesses he is a thief. Endeavor to bolster up defense of his forged letter sinks him deeper in mire. Produces another forgery while you wait.

"Under the headlines: 'Makes Manly Statement and Shows Honorable Possession of the Letter,' a local afternoon paper yesterday printed Noel Gaines' version of how he secured the letter which General

Percy Haly has pronounced a base forgery, and taking his own statement it shows acts which are anything but honorable, and which are convincing that the man who would stoop so low as to secure a letter or paper in the way in which he acknowledges in his statement could be guilty of what the former Adjutant General charges.

"In the same publication in this afternoon paper, Gaines prints another letter which he says General Haly gave him, and which General Haly declares to be a second forgery. This second letter, which is printed for the purpose of bolstering up the crusader in his false charges, is one of recommendation with a date line at its head giving a time at which the alleged writer can prove, if necessary, by a good many local men of standing, that he was hardly on speaking terms with Gaines because of what he considered attempts at blackmail to secure the appointment as Adjutant General of the State."

The defendant, before answering, made a motion that the regular judge vacate the bench and allow a special judge to preside, and, in support of this motion, filed the following affidavit:

"The affiant, the Kentucky Journal Publishing Company, by W. P. Walton, president of said company, says that the judge of this court can not properly preside in this action because he will not afford said company a fair and impartial tral, as he verily believes, for the following reasons, to-wit:

"1st. The said judge of this court is politically antagonistic to this defendant, and has political bias and enmity towards said company, and because—

"2d. The judge of this court has openly stated his belief in the genuineness of the signature of Percy Haly to the letter purporting to have been written

by Haly to Judge Lassing, and referred to in the alleged libel herein.

"3d. Because the judge of this court was in frequent communication and conference with the plaintiff, Noel Gaines, concerning the publication of said letter in the Crusader, a paper published by said plaintiff, out of which the alleged libelous publication herein grew.

"4th. This defendant says that the alleged libelous publication, and this suit, grew out of and were the direct result of the political campaign which has just ended between Gov. J. C. W. Beckham, upon the one side, and Senator J. B. McCreary, upon the other, for the United States Senatorship, and that said campaign was waged with great bitterness upon both sides, and to such an extent that the judge of this court felt called upon to go, and did go, on the stump and make speeches for said McCreary and against said Beckham, in which he attacked said Beckham personally, together with his administration of the State's affairs, and that in said campaign this defendant was the friend and partisan of said Beckham and his administration, and it, therefore, says that the judge of this court by his action as aforesaid, has become so embittered against this defendant that in fairness to himself he ought not to preside in this case, and can not do so in such an impartial manner as to afford this defendant a fair and impartial trial of this cause."

The court overruled the motion that he should vacate the bench, and presided at the trial, which resulted in a verdict in favor of the plaintiff for the sum of two thousand dollars.

The only ground relied upon for reversal of the judgment based upon the verdict of the jury is the refusal of the regular judge to vacate the bench.

So much of section 968, of the Kentucky Statutes, as is applicable to the subject in hand, is as follows:

"When, from any cause, the judge of the circuit court fails to attend, or being in attendance can not properly preside in an action, proceeding or prosecution pending in said court, or if either party shall file with the clerk of the court his affidavit that the judge will not afford him a fair and impartial trial, or will not impartially decide an application for a change of venue, the parties, by agreement, may elect one of the attorneys of the court to preside on the trial or hear the application, or hold the court for the occasion.   *   *.   *"

The affidavit filed by the defendant in the court below seems to us to fully measure up to the requirements of German Insurance Company v. Landram, 88 Ky., 433, which is the leading case upon the principle that, under the statute, it is necessary to state in the affidavit the facts from which the deduction is drawn, that the trial judge will not afford the litigant a fair and impartial trial. The affidavit not only states that the judge had a political bias and enmity toward the defendant, but that he had openly asserted his belief in the genuineness of the signature of Percy Haly to the letter, which was the crucial question in the libel suit; that the judge had been in frequent communication with the plaintiff concerning the publication of the letter in the Crusader, a newspaper under the control and management of the plaintiff. It further shows that the alleged libelous publication, and the suit concerning it, grew out of and was the direct result of a bitter political campaign which had just been waged between Governor Beckham, on the one side, and Senator McCreary on the other, for the office of United States Senator

for Kentucky. We are of opinion that the statements in this affidavit thoroughly disqualified the regular judge from presiding in the trial of the case. We do not mean to say that, in our opinion, these statements are true; for their truth can not be inquired into in this action. All that the statute, as construed by this court in German Insurance Company v. Landram, supra, requires is that the affidavit should allege such facts, which, if true, show that the trial judge will not, or may not afford the litigant a fair and impartial trial of his case. Manifestly, if the trial judge had openly expressed an opinion of the genuineness of the letter, which was the real question in the litigation, and if he had been, as charged, in communication with the plaintiff concerning its publication in a newspaper, there can be no doubt that the judicial mind was not in that state of impartial equipoise between the litigants which is required to afford a fair and impartial trial.

It is no answer to say that the record, as a matter of fact, does not show any subsequently occurring error prejudicial to the interest of the party complaining. This may be because the litigant has chosen to rest his right to a reversal alone upon the error of the court in refusing to vacate the bench; or because counsel for the litigant may not have been as watchful over the interest of his client as he should have been; or that the prejudicial acts upon the part of the court were not detected by the vigilance of counsel. In answer to the same proposition —that the record showed no ground for complaint of the judge's rulings—this court, in the case of Massie v. Commonwealth, 93 Ky., 588, said:

"But that is not the question; for the accused has the right to be tried by a judge that is fair and im-

partial, and when he has good reason to believe, supported by facts, that he will not afford him such trial, he should not be compelled to take chances of a trial before that judge in order that the truth of the matter may be developed, which may never be developed, because there are many ways that a partial or prejudiced judge may knife a party that he is trying without it appearing from the record or without his being able to ascertain the fact. So, when the fact is made to appear, by proper affidavits, the judge should then vacate, and it is a reversible error if he does not.''

In the case of Givens v. Crawshaw, &c., 21 Ky. Law Rep., 1618, the affidavit was to the effect that the regular judge, M. J. Moss, was personally hostile to the litigant because he had voted against the judge in his election, and had said that ''all those parties who opposed him and kicked out of the harness in the election that he would make them have a hard road to travel.'' This affidavit was held to be sufficient, under the statute, to require the regular judge to vacate the bench, and the judgment was reversed alone for this error. In the opinion, it was said:

''It is part of the current history of the day that severe antagonisms often occur between bolters and regulars, and that, too, without any desire or intention upon the part of either to wrong the other. It seems to us that under all circumstances that the trial judge should have vacated the bench and permitted the selection of another judge. The final judgment rendered in this case is erroneous.''

In the case of Powers v. Commonwealth, 24 Ky. Law Rep., 1007, it was held that an affidavit which

showed political antagonism and bias on the part of the judge toward the litigant, was sufficient to require the judge to vacate the bench. The opinion reviews all of the adjudications of this court upon the subject in hand, and it was there said:

"With the wisdom of the enactment of such a statute we have nothing to do; that is a question solely within the province of the law-making body of government. Nor can the fact that some litigants abuse this privilege of the statute, and do so to the great injustice of the trial judges and the adverse party, influence a fair interpretation of the law as it is. Many statutes are abused, but we never feel justified in declaring that they are inoperative because of that fact. The Legislature doubtless saw, and in the experience of the many years that this law had been upon the statute books of this Commonwealth may have been confirmed in the belief, that it was necessary to the just protection of the rights of litigants, and to an absolutely fair and impartial administration of justice through the courts, that such statute should be in existence that such a right should be available to the litigant, where the facts justified its employment.

"From this statute, and the decisions quoted from, the law may be gathered to be, if a litigant files his affidavit, stating that the judge will not give him a fair and impartial trial, and states therein the basis of such belief, and if the facts so stated are such 'as would prevent an official of personal integrity from presiding in the case, or as would prevent him affording a fair and impartial trial,' then the truth of the statement of the facts as set out in the affidavit must be assumed, for it can not be traversed or tried."

There is nothing in the opinion in Hargis, &c. v. Marcum, &c., 31 Ky. Law Rep., 795, which militates against the principle contained in the above cited cases. After analysing the affidavit, and showing that it did not state facts which entitled the litigant to require the judge to vacate the bench, it is said:

"If the affidavit had disclosed facts showing hostility on the part of the judge to Hargis as to the matter on trial, or expressions by the judge of opinion as to the merits of the case, or conduct negativing impartiality on his part, or tending to do so, a different question would be presented."

During the progress of the trial, the evidence was such that the judge thought it was due him to make an explanation of his connection with Noel Gaines and the subject-matter of the alleged libelous articles involved in the litigation, and by consent of counsel he made a statement, which, in justice to him, we incorporate in full. It is as follows:

"Gentlemen of the jury, since my name has been connected with this affair, I think it is due myself, and due the position that I occupy, and by the consent of counsel, to state to the jury my connection with that matter.

"I wouldn't attempt to give the dates at all, it was sometime between the first of July and the first of September, I am only able to fix that from the fact that it was during the summer vacation of the courts in this district, which occurred between these dates, I was over in Eminence on Saturday afternoon at a gathering of the farmers where they were organizing the American Society of Equity, I went there for the purpose of addressing them, and while at the Fair Ground, the Old Eminence Fair Ground, where the meeting was held, I was called to the long distance

telephone, and Colonel Gaines was at Frankfort and talked to me over the phone, and wanted to make an engagement with me to meet me concerning a matter as he thought of considerable political importance, saying that he had had some interview with Senator McCreary in respect thereto, and that probably he had been referred to me. We made no definite engagement at all. I said to him that 1 might be at home the following Monday and might not. On the following Monday, however, I was in the office of Mr. Holland, the official stenographer, of this district, in whose office I stay a great deal, and really call it my office, but it is his office, and Mr. Gaines came in when there was no one there but myself. We shook hands and he opened up the conversation concerning the letter and telegrams which has been referred to. I said nothing to him at all except probably a short answer or a question or two, and probably he talked for some ten or fifteen minutes when Mr. Holland came in, Mr. Holland, the official stenographer. I introduced them and told Mr. Gaines to go on, and further told him Mr. Holland's position, and after some further talk on the part of Mr. Gaines, probably some questions on my part, he produced what I now recognize to have been a copy of the letter that was introduced as the Haly-Lassing letter, and also produced what I now recognize to be a copy of the telegram sent by Colonel Gaines to Governor Beckham, as introduced in evidence here. I said to him then, 'I really don't care to talk to you Colonel Gaines about this matter. I have very grave doubts about my propriety of discussing the matter with you. I have no authority from Senator McCreary or General Hays, to represent them in their campaign, and while I am a very strong supporter of

each, I am not representing them, but if you are here this evening, I have two or three friends of mine I would like for you to talk to, talk to them in my presence.' It was arranged for three or half after three that afternoon at the office. I went out to my dinner, and telephoned to Charlie Lewis to come around, and concluded to telephone to Mr. Holland to bring Colonel Gaines out to my house. There, in the presence of Mr. Holland, Mr. C. M. Lewis, and Mr. Will Scott, I don't now recall whether any one else was present or not, Colonel Gaines talked about the matter at some length, and questions were asked by each one present concerning it, and we each advised, each one of us, that it was a matter of very serious importance, that if the letter was not genuine it was calculated to cause a great deal of trouble to him, and if it was genuine it might cause some trouble in the State, and we were not representatives of either of the candidates for leading offices in the primary, and that we couldn't handle the matter, and then again that we did not have the original of what purported to be the letter. I asked Colonel Gaines myself, probably I used the slang phrase, what's your game, or something of that kind, and he said his purpose was to write an article and publish these matters in his paper, called the Crusader, and that if he did he thought it would be very valuable campaign matter, and he wanted an order for, I think, 25,000 copies of the September issue, and 25,000 of the October issue, and I don't now recall the price, but think it was $2,000.00, maybe more, I don't remember, and we again informed him that we had no authority in the matter from either of them, and that we couldn't take it up, and we told him we had not seen the original, and we were not fully advised,

and he said he could show the original any time at Frankfort, and I think I made the remark, that I would be in Louisville the following day, or Wednesday, that being Monday, and if he was there and had the original I would look at it. I went to Louisville on the day in question, and met Colonel Gaines at the Old Inn, at Sixth and Main, and shook hands with him, and there was no one there just at that time that I recognized, and I made an arrangement to meet him at Senator Carroll's office some hour later in the day, and I met him there and asked him concerning the original, and he said he didn't have it with him, and I said 'very well, I don't care to handle it,' and I said 'that ends the matter,' and that is in substance the entire transaction.''

No judge should preside over a trial where the evidence requires so elaborate an explanation of his relations to the subject-matter of the litigation as that given by the trial judge in this case. This explanation shows conferences with the plaintiff concerning the letter, the genuineness of which was involved in the litigation before him, and the fact that he had, to some extent at least, canvassed its value as a political asset in a heated campaign in which he was deeply interested. It is but the utterance of a legal platitude to say that it is of the utmost importance that every man should have a fair and impartial trial of his case, and that to secure this great boon two things are absolutely essential; an impartial jury and an unbiased judge. But we go further, and say that it is also important that every man should know that he has had a fair and impartial trial; or, at least, that he should have no just ground for the suspicion that he has not had such a trial. Political bias (amounting to personal hostility) is

an arch enemy to an impartial trial, and its presence
undermines and weakens the foundations of the
temple of justice.   When this insidious evil holds
absolute dominion, a judicial investigation instead of
being a fountain in which justice sees only its own
fair reflection, sinks into a mere mockery of justice,
"a cistern for foul toads to knot and gender in."
Amid the bitter spume of an excited political cam-
paign, the cause of the litigation about to be tried
was engendered, and the judge was too closely identi-
fied with the opposing side of that conflict to be com-
petent, under the statute, to sit in judgment on the
legal rights of the defendant.   We are not to be
understood as reflecting on the integrity or character
of the learned judge whose ruling we are reviewing.
We think he was led into an error of judgment none
the less hurtful because it was unconsciously com-
mitted.

The judgment is reversed for a new trial.

Whole court sitting, except JUDGE LASSING.

NOTE BY REPORTER.—This case of Rager v. L. & N. R. R. Co. is reported in Vol. 137 Ky. Reports, on page 811, and by error of the reporter the opinion is attributed to Hon. Wm. Rogers Clay, Court Commissioner, and the case following, viz: Smedley v. Commonwealth, is reported in volume 138 Ky. Reports on page 1, and by like error of the reporter is attributed to Judge Hobson.— Both of these cases were decided by Judge Settle, and are inserted in Vol. 139, so as to correct the error of the reporter.

T. R. M'BEATH, Reporter.