## CHARLES B. KENDALL v. E. J. STAFFORD ET AL.

(Filed 19 November, 1919.)

1. **Statutes—Cities and Towns—Municipal Corporations—Commission Government—Salaries—Public Officials—Public Policy.**

    In construing the general municipal act, Laws 1917, subch. 5, subsequently passed to the late amendments of our Constitution, and sec. 6 thereof, as follows: "The governing body of any city may, by ordinance, fix the salary of the mayor of such city, or heads of departments or other officers," and to discover its true meaning, consideration should be given the law as it existed at the time of its enactment, the public policy as declared in judicial opinions and legislative acts, the public interest, and the purpose of the act in question.

2. **Same—Fix Salaries—Increase Salaries—Special Statutes—General Statutes—Constitution.**

    Where by special legislation a commission form of government is provided for a city, creating three commissioners and dividing the authority between each of them and giving them united authority as a board, and the act itself has fixed the salary of each of them, who have accepted the

duties before the late constitutional amendment, the provisions of the general municipal act, subch. 5, sec. 6, allowing the governing body of the city to "fix" the salary of the commissioners, does not permit them to change the general policy of the law, that public officers themselves may not pass upon matters in their official capacity in which they have a personal interest, and the board, created under the special act are without authority to increase the salaries of its members claiming such authority under the general law.

3. **Statutes—Cities and Towns—Municipal Corporations—Commission Government—Public Officers—Salaries—Increase—Vote of People.**

The general law permitting incorporated cities and towns to adopt a commission form of government, Laws 1917, subch. 5, by giving, under sec. 6, authority to the governing board by ordinance to "fix" the salary "of the mayor, . . . or heads of departments, or other officers," does not, by correct interpretation, permit the board, consisting of the mayor and two other commissioners, to increase their own salaries, fixed by the act, contrary to the settled policy of the State forbidding public officials to pass, as such, upon matters in which they are personally pecuniarily concerned, there being no express provision in the statute to that effect, the question for such increase being one for the people to vote upon.

CLARK, C. J., concurring.

APPEAL by plaintiff from *Bynum, J.,* at September Term, 1919, of GUILFORD.

This is a controversy without action, submitted upon the following facts:

1. That the city of Greensboro is a municipal corporation, and its charter is chapter 2 of the Private Acts of the General Assembly of 1911; that the defendants, E. J. Stafford, J. W. Donavant, and M. M. Boyles are the members of the board of commissioners of said city; that said Stafford is mayor and commissioner of accounts and finances, and said Donavant is treasurer of said city; that the plaintiff is a resident and taxpayer of said city of Greensboro.

2. That material parts of said charter are as follows:

"Sec. 4. That the corporate powers of the city of Greensboro shall be exercised as hereinafter provided by the board of commissioners and such other officers and agents as are hereinafter provided for, subject to such limitations as may be hereinafter imposed.

"Sec. 5. That the executive and administrative powers, authority, and duties in the city of Greensboro are distributed into and among the several departments, and the powers and duties to be performed are assigned to the appropriate departments and officers, all as herein set forth.

"Sec. 6. The board of commissioners shall consist of three members, one of whom shall be mayor, and all of whom shall be elected by vote of the people, as hereinafter provided. One of said commissioners shall

be elected and known as the commissioner of public works; one of said commissioners shall be elected and known as the commissioner of public safety, and the mayor shall be known as the commissioner of public accounts and finances.

"Sec. 53.  The mayor and commissioners shall have offices at the city hall.  The compensation of the mayor shall be twenty-six hundred ($2,600) dollars per annum, and that of each commissioner twenty-four hundred ($2,400) dollars per annum, payable in equal monthly payments.  Every other officer, agent, employee, and assistant of the city government shall receive such salary or compensation as the board of commissioners shall by ordinances provide, payable in equal monthly installments, unless the board shall order payments to be made at non-payment intervals."

3. That on ........ August, 1919, the board of commissioners of the city of Greensboro, composed of the defendants herein, adopted, by unanimous vote, an ordinance, which provides for an increase of $600 a year in the salary of each of said commissioners; and said E. J. Stafford, as mayor and commissioner of accounts and finances, and J. W. Donavant, as treasurer, intend to pay out of the public funds of said city the increased salary provided by said ordinance, unless they are restrained by this Court from doing so.

4. That plaintiff contends that the ordinance referred to is repugnant to the charter of said city, and the laws of North Carolina, and is therefore void; and that defendant should be restrained from the threatened misappropriations of public funds, and that the court should declare said ordinance void and of no effect.

And defendants contend that said ordinance is a valid exercise of the powers conferred upon them by chapter 136, subchapter 5, section 6, of the Public Laws 1917, which is as follows:

"The governing body of any city may, by ordinance, fix the salary of the mayor of such city or heads of departments of other officers."

Judgment was rendered in favor of the defendants, and the plaintiffs excepted and appealed.

*N. L. Eure for plaintiff.*
*Charles A. Hines for defendants.*

ALLEN, J.  The city of Greensboro has adopted the commission form of government under a special act of the General Assembly (ch. 2, Private Laws 1911), and all the corporate powers of the city are vested in three commissioners, who are at present the defendants.

The charter of the city fixes the salary of each commissioner at a definite sum, and this has been increased $600 per annum by the unani-

mous vote of the defendants, each of the commissioners voting the increase for himself and for his associates.

This action of the commissioners is not assailed upon the ground of fraudulent or improper motives, nor is it claimed that the additional compensation is not deserved, but the plaintiffs, citizens and taxpayers, do question the power of the defendants to make the increase, and it is admitted that this power does not exist unless it is conferred by ch. 136, subch. 5, sec. 6, Laws 1917, which is as follows: "The governing body of any city may by ordinance fix the salary of the mayor of such city, or heads of departments or other officers."

The determination of the appeal depends therefore on the construction of the section of the municipal act quoted, and in the effort to discover its true meaning it is proper to consider the law as it existed at the time of its enactment, the public policy of the State as declared in judicial opinions and legislative acts, the public interest, and the purpose of the act.

"Every statute must be construed with reference to the object intended to be accomplished by it. In order to ascertain this object it is proper to consider the occasion and necessity of its enactment, the defects or evils in the former law, and the remedy provided by the new one, and the statute should be given that construction which is best calculated to advance its object, by suppressing the mischief and securing the benefits intended. For the purpose of determining the meaning, although not the validity, of a statute, recourse may be had to considerations of public policy, and to the established policy of Legislature as disclosed by a general course of legislation. . . . Where the proper construction of a statute is otherwise doubtful, arguments from the inconvenience, absurdity, injustice, or prejudice to the public interests, resulting from a proposed construction, may be considered." 36 Cyc., 110, *et seq.*

The law at the time the municipal act was adopted fixed the salaries of the defendants at definite sums, and in amounts sufficiently attractive to induce the defendants to accept the offices, and it was not necessary to deal with the salaries of the commissioners of Greensboro in order that the corporate powers might be exercised.

The public policy of the State, found in the statutes and judicial decisions, has been pronounced against permitting one to sit in judgment on his own cause, or to act on a matter affecting the public when he has a direct pecuniary interest, and this is a principle of the common law which has existed for hundreds of years.

"It is an ancient maxim, applicable in all cases, civil or criminal, where judicial functions are to be exercised, whether in proceedings of inferior tribunals or in courts of last resort, that no man ought to be a judge in his own cause, a maxim which appeals with such force to one's

sense of justice that it is said by *Lord Coke* to be a natural right so inflexible that an act of parliament seeking to subvert it would be declared void." 15 R. C. L., 527.

"Under the fundamental maxim that no one ought to be judge in his own cause, if we had no statute law upon the subject, no judge, whether probate or other, could take jurisdiction of any cause wherein he was a party, or otherwise had a pecuniary interest. This principle is of universal application as a rule of the common law, and subject thereto must be the exercise of all the powers of a judge. Broom's Legal Maxims, 118; 1 Hopkins Ch. Rep., 1; 2 Strange's Rep., 173.

"In accordance with this principle, in every grant of jurisdiction, it is always to be understood that the powers conferred are limited by the tacit exception that the judge is not to decide his own cause." *Gregory v. Ellis,* 82 N. C., 226.

"The common law forbade a man being the judge of his own cause, as 'if an act of Parliament give a man power to try all causes that arise within his manor or dale, yet, if a cause should arise in which he himself is a party, the act is construed not to extend to that, because it is unreasonable that any man should determine his own quarrel.' 1 Blackstone, 91. . . . No one ought to be a judge in his own cause; and so inflexible, and so manifestly just, is this rule that *Lord Coke* has laid it down that 'even an act of Parliament made against natural equity, as to make a man a judge in his own case, is void, in itself; for *jura naturae sunt immatubilia,* and they are *leges legum.'*

"This maxim applies in all cases where judicial functions are to be exercised, and excludes all who are interested, however remotely, from taking part in their exercise.

"It is not left to the discretion of a judge, or to his sense of decency, to decide whether he shall act or not; all his powers are subject to this absolute limitation, and when his own rights are in question, he has no authority to determine the cause." *White v. Connelly,* 105 N. C., 70.

In *Snipes v. Winston,* 126 N. C., 374, which is approved in *Davidson v. Guilford County,* 152 N. C., 437, the aldermen of Winston elected one of their members, who participated in the meeting, a street boss at a salary of $50 per month, and the Court declared the action of the board of aldermen void because of the pecuniary interest of one of its members, and said: "This principle cannot be questioned, and experience has shown its wisdom. Common reasoning declares this principle to be sound, and the public is entitled to have it strictly enforced against every public official."

The statute law is equally explicit, as it provides: "If any person, appointed or elected a commissioner or director to discharge any trust wherein the State or any county, city, or town may be in any manner

KENDALL *v.* STAFFORD.

interested, shall become an undertaker, or make any contract for his own benefit, under such authority, or be in any manner concerned or interested in making such contract, or in the profits thereof, either privately or openly, singly or jointly, with another, he shall be guilty of a misdemeanor." Rev., sec. 3572.

Judges, jurors, clerks of courts, aldermen, and county commissioners were and are disqualified by direct pecuniary interest, and we come to the act of 1917, from which the defendants claim to derive their own salaries, knowing of this condition of the law, and that it was in the mind of the General Assembly when the municipal act was enacted, and fully conscious of the settled policy of the State, declared to be wise by experience, and that it should be strictly enforced in the interest of the public, and under which the action of the defendants would be void.

Was it the intention of the General Assembly to change the law, and to reverse the policy of the State, not only as related to Greensboro, but as to all municipal corporations in the State, because the act is general, and if it confers authority on the governing body of Greensboro to increase their own salaries, it has a like effect in other cities and towns?

The question ought not to be answered in the affirmative unless compelled to do so by the clear, positive mandate of the Legislature.

The language is, "The governing body of any city may, by ordinance, fix the salary of the mayor of such city or heads of departments or other officers."

The authority is to "fix" the salary, not to increase it, and while the first may include an increase, its ordinary meaning is to make permanent something that is unsettled, and the salaries of the defendants were already fixed and settled by the charter of the city.

It is also authority to "fix the salary of the mayor of such city or heads of departments or other officers," and not to increase their own salaries, and following the rule applicable to statutes conferring power on judges, laid down by Blackstone, and approved in *White v. Connelly, supra,* that, "If an act of Parliament gives a man power to try all causes that arise within his manor of dale; yet, if a cause should arise in which he himself is a party, the act is construed not to extend to that, because it is unreasonable that any man should determine his own quarrel," the act should not be held to cover an increase of their own salaries.

The defendants come within the letter of the statute, but not within its spirit, and a consideration of the whole statute leads to the conclusion that their authority over salaries relates to those of other officers, and not to their own.

"The words, phrases, and sentences of a statute are to be understood as used, not in any abstract sense, but with due regard to the context, and in that sense which best harmonizes with all other parts of the

statute. In expounding one part of a statute, therefore, resort should be had to every other part, including even parts that are unconstitutional, or that have been repealed." 36 Cyc., 1131.

The statute (ch. 136, Laws 1917) enacted after the adoption of the constitutional amendment of 1916 for the purpose of providing by general law for the organization and government of cities and towns, is divided into subchapters, and these into sections.

The first subchapter provides, among other things: "The provisions of this act, so far as they are the same as those of existing general laws, are intended as a continuation of said laws, and not as new enactments, and so far as they give general powers to cities are supplementary to and additional to the special charters of ·cities, which have not such powers, unless inconsistent with or repugnant thereto, and a repetition of such powers if already possessed by cities by virtue of special charters."

The provision in the act giving authority to governing bodies to increase salaries, if held to apply to the city of Greensboro, would not only be repugnant to section 53 of its charter, which says "the compensation of the mayor shall be $2,600 per annum, and that of each commissioner $2,400 per annum," but it would destroy it.

Subchapter 2 provides for the incorporation of communities, and it is significant that after the board of municipal control has approved the petition, it is required to see that a mayor and commissioners are elected under chapter 73 of the Revisal, which has nothing in it relating to the commission or manager form of government, and deals only with the prevailing system of a mayor and aldermen or commissioners.

Subchapters from three to fifteen, inclusive, confer additional powers on municipal corporations, establish different departments, and prescribe the duties of different officials.

Subchapter 16 is divided into seven parts.

In Part 1 provision is made for elections to determine whether a particular plan of government shall be adopted, and in Parts 2, 3, 4, 5, and 6 the plans of government are set out, being (1) Government by mayor and city council elected at large; (2) Government by mayor and city council elected by districts and at large; (3) Commission form of government; (4) Government by mayor, city council, and manager; (5) Government combining same features in the other plans.

Part 7 says: "Any municipality may amend or repeal its charter or any part thereof, or adopt a new charter. The proposal to amend, repeal, or adopt may be initiated, (a) By the governing body of such municipality; (b) By any number of the qualified electors of such municipality, not less than twenty-five per centum of qualified electors entitled to vote at the next preceding regular municipal election in such municipality." The amendment proposed is then submitted to a vote of the people.

In all of these plans the salaries of the members of the governing bodies are fixed at specific sums or are graduated, dependent on population, and ample provision is made for amendment of the charter by a vote of the people, so that, if a salary named in a charter or in any plan of government becomes inadequate, by reason of changed conditions or otherwise, the question of an increase of salaries can be decided by the people instead of by those who would be benefited by the increase.

It is proper to take into consideration, in determining the true construction of the act, that the salaries of the defendants were already "fixed" in the charter of the city when the municipal act of 1917 was adopted; that the public policy of the State during its whole history and at the present has condemned the idea that one may sit in judgment on his own cause; that the public welfare demands that this principle shall be rigidly enforced in order that public officials may be free from temptation, and may have an eye single to the interest of the public; that the municipal act does not in express terms authorize an increase of salaries, but only gives authority to fix salaries; that it does not refer to increasing the salaries of the members of the governing body, but only to the salaries of mayor, heads of departments, and other officials; that to hold the section upon which the defendants rely gives authority to increase their own salaries would be destructive of a part of the charter of the city; that under the municipal act the salaries may be increased by submitting the question to a vote of the people, and giving due weight to these matters, we are of opinion that the action of the defendants in voting an increase of their salaries is without authority of law and void.

Reversed.

CLARK, C. J., concurs in the well considered opinion of *Allen, J.,* in all respects, and adds: It is true that formerly, in all the States, the Legislatures were allowed to fix their own compensation. This exception to sound principle was deemed unavoidable by reason of its being the legislative power, and therefore the only authority which could act. It is a part of the history this and all other States that at each session of the State Legislature, owing to the differences among the members as to the proper rate of compensation a week, and often more, of the session was usually wasted in settling that matter. To avoid this the State Constitution, adopted in 1868, Art. II, sec. 28, provided that: "The members of the General Assembly should receive as compensation for their services the sum of $4 per day for a session not exceeding 60 days, and should they remain longer in session they shall serve without compensation." Public opinion deemed it inexpedient, as well as an impropriety, that officials should fix their own pay. For the same reason, a similar change was made in the Constitution of nearly all the other

KENDALL *v.* STAFFORD.

States, fixing the compensation of members of the Legislature. By reason of the increased cost of living, this compensation has now become inadequate. But to meet this, wherever a constitutional amendment has been made it has increased the rate of compensation, and not restored to the Legislature the former power of fixing the compensation of its own members.

It is true that owing to the difficulty of amending the Constitution of the United States, Congress has been left free to fix its own compensation, but this is generally done to take effect with the next Congress. On a memorable occasion, when Congress raised its own compensation and made it date back to the beginning of the session, the popular indignation at what was styled the "back-salary grab" retired most of those members and senators who voted for it to private life.

The State Constitution of 1868 also provided, Art. III, sec. 10, that no officer whose office was established either by the Constitution or created by law "shall be appointed or elected by the General Assembly." This was to prevent the somewhat similar temptation to elect members of their own body. This provision has been stricken out by a subsequent amendment, with the result that it has become not unusual for that body to choose its own members to positions. Especially is this true in the election of trustees of the University, and to other unsalaried positions, the acceptance of which is not subject to the criticism that those elected receive additional compensation, but because in violation of Art. XIV, sec. 7, which provides: "No person, who shall hold any office or *place of trust* or profit," either under the United States or any other State, or under this State, "shall hold or exercise any other office or *place of trust* or profit under the authority of this State, or be eligible to a seat in either House of the General Assembly," with the exception only of "officers in the militia, justices of the peace, and commissioners of charities, or commissioners for special purposes."

I concur in the opinion of the Court upon both grounds given, *i. e.,* (1) That the charter having specified the compensation of these officials, this is not repealed by the general statute, Laws 1917, ch. 136, subch. 5, sec. 6, which is intended to authorize the board of aldermen to fix the salaries of the mayor and other officials. (2) That it is contrary to sound principles that any official should have the power to fix his own compensation.