EX PARTE C. H. PEASE.

No. 15449. Delivered February 22, 1933.
Reported in 57 S. W. (2d) 575.

The opinion states the case.

*Griffin & Kimbrough*, of McAllen, for appellant.

*Lloyd W. Davidson*, State's Attorney, of Austin, for the State.

LATTIMORE, JUDGE.—A grand jury of Hidalgo county, Texas, returned three indictments against Mr. Couch and one against Mr. Freeland, on April 30, 1932. A few days later Pease, applicant herein, published in his newspaper two articles and an editorial, all of which are set out in the record before us. Thereafter an affidavit was filed in the 92nd District Court of Hidalgo county, an investigation ordered, a committee appointed, and an order and judgment entered holding Pease in contempt of court by virtue of said publications, and punishment fixed at confinement in the county jail for three days and payment of a $100 fine. By application for a writ of habeas

corpus Pease seeks release from confinement under said order.

The newspaper articles in question are long, and insertion thereof in this opinion and their publication in the law books hereafter, would be expensive, even if interesting. We have read and considered all of them. One, entitled "Bounds Grand Jury Returns Indictments," as we view it, merely states facts without much comment, none of which appears to be in disrespectful language, relative to said cases, save that in the concluding paragraph of said article is the statement as follows: "The general view over Hidalgo county is that these indictments were for political purposes, only." It was in proof that it is usual and customary to refer to a grand jury, as the grand jury of the judge in whose court same is or has been functioning. To hold that placing said entitlement upon the article above mentioned, was intended as some kind of statement that the judge had controlled or influenced the grand jury in the return of the indictments mentioned, would seem about as far fetched as any conclusion could possibly be. We entirely fail to see any reflection upon the judge of the court in the concluding paragraph of the article which is above quoted, and which had reference to the action of a grand jury that had adjourned.

Another of said articles entitled "This is pretty bad record —Maybe you can beat it," sets out in extenso acts and things in the record of Mr. Freeland, in language somewhat parabolic wherein while seeming to refer to the matters mentioned as the wrongdoings of Mr. Freeland, it is evident that the article was intended as praising and extolling Freeland. This article concludes as follows: "The most serious crime that can be committed in Hidalgo county is to antagonize the democratic ring. Every guilty man of that offense is a marked man and sooner or later he will be called to account if the democrats have the power." It is difficult for us to see how any one could find aught in this article which by any sort of innuendo or interpretation could be construed as reflecting upon the judge of the court.

The editorial referred to was headed "Grand Juries" and consisted entirely in abstract statements of the views of the editor as to the high duties and motives which should actuate and move grand juries, jury commissioners and judges in the discharge of their duties; and a statement of the corresponding dangers, evils, and hurtful consequences when such officials are not moved by such disinterested and pure motives. No reference is made to any particular grand jury, jury commissioner, or judge by name, location, act or deed, and we con-

fess ourselves unable to see anything therein which might not be appropriately read to his grand jury by any judge of any court upon their impanelment.

Without discussing the procedure in this case to any great extent, we observe that if the first affidavit by the foreman of the grand jury and two other members of said body, which was presented to the trial judge on the same day the newspaper articles were published, and on which said judge ordered the contempt case against applicant to be docketed and number to be given to it, is to be taken as the affidavit on which this contempt proceeding rests, same was wholly insufficient for said purpose under authority of Ex parte Landry, 65 Texas Crim. Rep., 444, because of the fact that said affidavit was made on information and belief, and set out none of the acts or publications of applicant. We also observe that the order and judgment of the trial court entered on May 10th finding and adjudging applicant guilty of contempt for said publications, same being at most but constructive contempt, and applicant not being present, and no notice ever having been served upon him to appear, would be entirely void and without authority as such judgment; also that, if the judgment then so entered was made the basis for the judgment later entered on May 16th, in which reference is made to said judgment of May 10th, same would also be without authority of law.

We note that upon the hearing before the lower court on May 16th applicant, responding to his plea that he only published what was the truth, without intent to reflect upon either the judge of the 92nd District Court or his grand jury, offered to prove the truth of what he had published, evidently in so far as same related to any matter of fact stated in said publications, and that the court declined to allow such proof. It was formerly the rule that one sought to be held for contempt might make a sworn statement disavowing evil intent or contemptuous purpose, and thus place himself in such position as that this freed him entirely of the imputation of contempt and entitled him to his discharge. Volume 6, R. C. L., pp. 534-535, and cases cited.

It is still the rule in this state that one charged with contempt shall be allowed to prove the truth of his alleged contemptuous utterance. Ex parte O'Fiel, 93 Texas Crim. Rep., 216. We think proof of the truth of the matters so published would have entitled applicant to his discharge upon the hearing before the court. We note the court refused to permit him to make such proof, to which he took his proper bill of exception.

We enter into no extended discussion of the action of the

court in striking out applicant's motion to have the court recuse himself. The courts of this state seem to have committed themselves to the proposition that expressed prejudgment of a case will not disqualify the judge in view of the restricted language of our statutes on disqualification, but in cases where the gist of the whole determination is whether some matter be a contempt of the court, and offer is made in proper form to show that there has been expressed prejudgment of such matter by the very judge involved, it occurs to us that the vastly better practice would be from the very nature of the case, to call on some judge whose honor or integrity has not been attacked, or whose rulings have not been contemptuously treated, and submit the matter to his calm judgment, especially in cases of constructive contempt.

Inclining to the view that the matters of publication were not contemptuous, and having serious doubt of the validity of the proceedings herein, and being convinced that applicant should have been allowed to prove the truth of the matters and things so published by him, the prayer of applicant will be granted, the judgment of contempt will be set aside, and applicant will be discharged.

*Applicant discharged.*