E. Y. PONDER v. HUBERT DAVIS and BRISTOL CROWDER.

(Filed 7 June, 1951.)

**1. Contempt of Court § 5: Judges § 2d—**

Where an order to show cause why defendants should not be held in contempt is issued in an action involving a contested election, the resident judge issuing the order should recuse himself upon petition and affidavit alleging that such judge took an active part on behalf of the plaintiff in the campaign and averring upon verification that in good faith affiant believes he could not obtain a fair and impartial hearing before such judge. G.S. 5-9.

**2. Constitutional Law § 20a—**

A fair trial in jury cases and an impartial judge in all cases are prime requisites of due process.

**3. Contempt of Court § 5: Judges § 2d—**

In contempt proceedings arising out of a contested election, verified petition and affidavit for recusation for bias alleging that "in good faith" defendants believe they could not obtain a fair and impartial hearing before the resident judge issuing the order because he had participated in the campaign on behalf of plaintiff, may not be declared scurrilous and untrue and ordered stricken from the record on the court's own notion or *ipsi dixit* without any counter-affidavit or evidence to contradict it, but, if the judge wishes to contest the averments, he should transfer the cause to another judge and file his affidavit in reply or request to be permitted to testify orally.

**4. Same—**

Upon petition for recusation for bias in contempt proceedings, the act of the judge, after finding facts, in transferring the matter to another judge for punishment lends color to the averment of prejudice and strengthens the conclusion that the matter should have been referred before attempting to find any facts.

**5. Judges § 2d: Elections § 18a—**

In an action involving a contested election, undenied and unchallenged averment in the petition and affidavit for the recusation of the judge that the judge personally took an active part in the campaign, *is held* to disqualify such judge to hear the case and he should have granted the petition for an order of recusation.

**6. Contempt of Court § 6—**

In contempt proceedings the facts upon which the contempt is based, especially the facts concerning the purpose and object of the contemnor, must be found and filed in the proceedings in order to sustain judgment of punishment, and where the judge to whom the matter is transferred for punishment is not authorized by the order of transfer to make any findings, and the findings by the judge ordering the transfer are ineffectual, judgment imposing punishment for contempt cannot be sustained.

**7. Judges § 2d—**

Where the unchallenged averment for recusation sets out *prima facie* a legal objection to prejudice all subsequent orders and judgments entered in the cause, including the denial of the petition, must be vacated.

APPEALS by defendants from *Nettles, J.,* in chambers at Asheville, N. C., 9 and 16 December, 1950, and 20 January, 1951, and from *Rudisill, J.,* at 8 January Civil Term, 1951, of BUNCOMBE,—from MADISON.

Civil action for temporary restraining order to prohibit the defendants from performing the duties of sheriff or jailer of Madison County.

The plaintiff, E. Y. Ponder, was the Democratic candidate for Sheriff of Madison County in the General Election of 7 November, 1950. The

defendant, Hubert Davis, was the incumbent sheriff of the county and the Republican candidate to succeed himself in the same election. The vote was close and each claimed to be the winner in the election.

On 16 November, a certificate of election was duly issued to the plaintiff by the County Board of Elections. He was inducted into the office on 4 December, 1950, by taking the required oath and submitting his bond which was approved. The defendant, Hubert Davis, on the other hand, claiming to be the successful candidate in the election, appeared before a justice of the peace, took the oath of office as sheriff and appointed Bristol Crowder his First Deputy and Jailer.

On 5 December, 1950, the plaintiff instituted this action in the Superior Court of Madison County and immediately applied to the resident judge of the district, Honorable Zeb. V. Nettles, who resides in Buncombe County, for a temporary injunction restraining the defendants, Davis and Crowder, from exercising any of the functions of sheriff or jailer in Madison County. The order was issued in accordance with the prayer of the complaint, returnable before the resident judge in Asheville at the courthouse at 11 o'clock a.m., 16 December, 1950.

Two days later, 7 December, 1950, on affidavit submitted by the plaintiff that Bristol Crowder, upon whom service of the order of 5 December had been made, refused to surrender possession of the jail, and that Hubert Davis, who was concealing himself to avoid service of process, had his former deputies in possession of the sheriff's office and they refused to surrender the office or the jail, the resident judge issued a supplemental order directing the defendants, Hubert Davis and Bristol Crowder, their agents and former deputies, naming them, to appear before him at the courthouse in Asheville at 11 o'clock in the forenoon on 9 December, 1950, "to show cause, if any there be, why they and each of them should not be punished for contempt of this court."

None of the defendants appeared before the resident judge in response to the show-cause order, but their counsel did appear with a written motion and affidavits signed by Bristol Crowder, made "on behalf of himself and all other deputies of Hubert Davis, Sheriff of Madison County," asking that the entire cause be set for hearing before some other Superior Court Judge, and specifically averring that "in good faith," this affiant "sincerely believes that he cannot obtain a fair and impartial hearing before this court upon the merits of this case; that a great number of people of Madison County . . . entertain the same opinion; . . . that as this affiant is informed and believes, this court personally came to the rural sections of Madison County immediately prior to the last political campaign in November 1950 and took an active part in the campaign for the plaintiff and other Democratic candidates; that this

court was a candidate during the last campaign along with the plaintiff and, while having no personal opposition, was active in behalf of the Democratic ticket; . . . that the great majority of the people of Madison County, regardless of the decision of the Court in the present case, would feel that political considerations were the determining factor."

Upon hearing the motion and affidavits read, the court found as a fact "that the motion in this cause is scurrilous and untrue and orders it stricken from the record. The court further finds that the actions of the attorneys in the matter for the defendants are not in good faith; . . . that the action of the attorneys in not bringing their clients into court in obedience to the orders of the court is illegal and unlawful and not in keeping with good order and good faith and is unethical on their part; that the allegations made as to the prejudice of the court are untrue and are untrue to the knowledge of the attorneys for the defendants." The court being of opinion that the defendant Davis ought to be served with process, continued the matter to be heard before him in Asheville on Saturday, 16 December, 1950. This order was entered 9 December, 1950.

Pursuant to the above order, counsel for the defendants appeared specially before the resident judge on 16 December, moved to dismiss for want of jurisdiction to hear the matter out of Madison County, filed answer for all the defendants and an affidavit of Hubert Davis in which he undertook to purge himself of any contempt.

The court overruled the motion, found all the defendants guilty of contempt in failing to appear before the court as ordered, and ordered the defendants in arrest and to appear before the regular judge holding the courts of the 19th Judicial District in Buncombe County on 8 January, 1951, for the purpose of receiving "such judgment as said Judge may decree in the premises."

The parties with their counsel appeared before Honorable J. C. Rudisill in accordance with the above order, undertook to purge themselves of any contempt, but were given fines as follows: Hubert Davis $100; Bristol Crowder $50, and the other defendants $25 each.

From this order, appeals were noted and bonds fixed.

Thereafter, on 20 January, 1951, motion was made before the resident judge to strike certain portions of the answer and cross-action of Hubert Davis and Bristol Crowder. Motion allowed; objection and exception by defendants.

The case on appeal was settled by Judge Rudisill, "in collaboration with Judge Zeb. V. Nettles, who heard a portion of said case."

Exceptions are taken to the order of 9 December, 1950, and all subsequent orders and judgments entered in the cause.

Defendants appeal, assigning errors.

*J. Walter Haynes, A. E. Leake, and Shuford, Hodges & Robinson for plaintiff, appellee.*

*J. M. Baley, Jr., and Clyde M. Roberts for defendants, appellants.*

STACY, C. J.  The principal question for decision is whether the judgment of Judge Nettles, finding the defendants guilty of contempt, and the judgment of Judge Rudisill, imposing punishments on such finding, or either of them, can be sustained.  The record impels a negative answer.

## I.  THE JUDGMENT OF JUDGE NETTLES.

In the first place, it should be noted that by G.S. 5-9, "In all proceedings for contempt and in proceedings as for contempt, the judge or other judicial officer who issues the rule or notice to the respondent may make the same returnable before some other judge or judicial officer"; and "When the personal conduct of the judge or other judicial officer . . . is involved, it is his duty to make the rule or notice returnable before some other judge or officer," unless the proceeding be for some act or conduct "committed in the presence of the court and tending to hinder or delay the due administration of the law," or "for the disobedience of a judicial order rendered in any pending action."  This last limitation, or proviso, we apprehend, was not intended to cover an order entered in the same cause by the same judge when the propriety of his acting in the premises, and issuing the very order alleged to have been violated, is called in question.  The statute declares a sound public policy that no judge should sit in his own case, or participate in a matter in which he has a personal interest, or has taken sides therein.  *Moses v. Julian,* 45 N.H. 52, 84 Am. Dec. 114 and note.  Here, it is alleged the judge took part on behalf of the plaintiff in the very election in which the plaintiff and one of the defendants were running for sheriff and about which they are now contending.  We think the case comes within the spirit of the act requiring removal, if not within the letter, for the gravamen of the petition and affidavit of bias is, that the presiding judge took a partisan interest in the election contest, out of which the present controversy arose.  *S. v. Hartley,* 193 N.C. 304, 136 S.E. 868; *S. v. Byington* (Utah—December 17, 1948), 200 Pac. 2d 723, 5 A.L.R. 2d 1393.

> "If self the wavering balance shake,
> It's rarely right adjusted."
> —BURNS *(Epistle to a Young Friend)*

Aside from the statute, however, "Every litigant, including the state in criminal cases, is entitled to nothing less than the cold neutrality of an impartial judge."  *S. ex rel. Mickle v. Rowe,* 100 Fla. 1382, 131 So. 331;

15 R.C.L. 539; 30 Am. Jur. 76 and 778. A fair jury in jury cases and an impartial judge in all cases are prime requisites of due process. *Chesson v. Container Co.,* 223 N.C. 378, 26 S.E. 2d 904. There is nothing on the record to contradict the petition and affidavit of Bristol Crowder or to support the findings of fact made by the judge in his order of 9 December, 1950. If he deemed it necessary or wise to challenge the matters set out in the petition and affidavit—and the plaintiff was not able to do it for him—it would seem that he might have transferred the matter to some other judge and filed his affidavit in reply thereto or asked to be permitted to testify orally in the case. *Sigourney v. Sibley,* 21 Pic. (Mass.) 101, 32 Am. Dec. 248; 48 C.J.S. 1097. To declare the petition and affidavit scurrilous and untrue and order it stricken from the record on the court's own notion without any counter-affidavit or evidence to contradict it, would seem to be making short shrift of the matters interposed by the defendants, notwithstanding the verified allegation of good faith. *Mfg. Co. v. Arnold,* 228 N.C. 375, 45 S.E. 2d 577; *Kendall v. Stafford,* 178 N.C. 461, 101 S.E. 15; *White v. Connelly,* 105 N.C. 65, 11 S.E. 177; *Gregory v. Ellis,* 82 N.C. 225; See, also, *Advisory Opinion,* 227 N.C. 705, 41 S.E. 2d 749.

It is true a party ought not be permitted to disqualify a judge or to interrupt a proceeding by a false and scurrilous attack upon the presiding officer, and if the instant petition and affidavit of Bristol Crowder should prove to be such, he may be dealt with summarily and punished accordingly. Precedent decrees that a judge should recuse himself in contempt proceedings where they involve personal feelings which do not make for an impartial and calm judicial consideration and conclusion in the matter. *Snyder's Case,* 301 Pa. 276, 152 Atl. 33, 76 A.L.R. 666; 30 Am. Jur. 786. And it has been declared the better practice in recusations for prejudice to call upon some other judge whose rulings have not been ignored or disregarded, especially in cases of indirect or constructive contempt. *Ex Parte Pease,* 123 Tex. Cr. 43, 57 S.W. 2d 575; 48 C.J.S. 1064. Indeed, in the instant case the fact the judge felt constrained or impelled to transfer the matter to another judge for judgment lends color to the view that it should have been transferred before any findings were made, since the judgment of contempt, to be effective, needs to recite the facts upon which it is founded. *In re Odum,* 133 N.C. 250, 45 S.E. 569. He evidently recognized some impropriety in finally disposing of the matter.

The remarks of *Chief Justice Taft* in the case of *Cook v. United States,* 267 U.S. 517, 69 L. Ed. 767, involving a similar petition for recusation, would seem to be appropriate here:

"The power of contempt which a judge must have and exercise in protecting the due and orderly administration of justice and in maintaining

the authority and dignity of the court is most important and indispensable. But its exercise is a delicate one and care is needed to avoid arbitrary or oppressive conclusions. This rule of caution is more mandatory where the contempt charged has in it the element of personal criticism or attack upon the judge. The judge must banish the slightest personal impulse to reprisal, but he should not bend backward and injure the authority of the court by too great leniency. The substitution of another judge would avoid either tendency but it is not always possible. Of course where acts of contempt are palpably aggravated by a personal attack upon the judge in order to drive the judge out of the case for ulterior reasons, the scheme should not be permitted to succeed. But attempts of this kind are rare. All of such cases, however, present difficult questions for the judge. All we can say upon the whole matter is that where conditions do not make it impracticable, or where the delay may not injure public or private right, a judge called upon to act in a case of contempt by personal attack upon him, may, without flinching from his duty, properly ask that one of his fellow judges take his place."

And it was said in *Berger v. United States,* 255 U.S. 22, 65 L. Ed. 481, that the policy or solicitude underlying the Federal statute on the subject, Section 21 of the Judicial Code, 28 U.S.C.A., applicable in the Federal Courts, is that "the tribunals of the country shall not only be impartial in the controversies submitted to them, but shall give assurance that they are impartial,—free, to use the words of the section, from any 'bias or prejudice' that might disturb the normal course of impartial judgment"; *i.e.,* shall also appear to be impartial. *Whitaker v. McLean,* 118 Fed. 2d 596.

Nor do we think the subsequent partial transfer of the proceedings to Judge Rudisill for judgment is in keeping with the usual course and practice in such cases. One judge may transfer a case to another, but it is unusual for one judge to transfer a case to another and still hold on to it for ultimate disposition. Then, too, a partial or half-way transfer is more likely to produce suspicion of prejudice than to avoid it—the very thing it seeks to eschew. Like appeasement, it defeats its own ends.

It is important that the judgments of the court should be respected. To insure this, however, the court must first make sure that they merit respect. The issue here raised transcends any consideration of the immediate personalities or parties to the proceeding. "The law is not so much concerned with the respective rights of judge, litigant, or attorney in any particular cause, as it is, as a matter of public policy, that the courts shall maintain the confidence of the people." *U'Ren v. Bagley,* 118 Or. 77, 245 Pac. 1074, 46 A.L.R. 1173; 30 Am. Jur. 768. As stated in *People ex rel. Roe v. Suffolk Common Pleas,* 18 Wend. 550: "Next in importance to the duty of rendering a righteous judgment is that of doing it in

such a manner as will beget no suspicion of the fairness and integrity of the judge." Or as a former member of this Court, *Allen, J.,* was wont to say: It is not enough for a judge to be just in his judgments; he should strive to make the parties and the community feel that he is just; he owes this to himself, to the law and to the position he holds. It is a great thing to have power, but it is an awful thing to have to use it in contempt proceedings, for in such hearings the wisdom and patience of the judge are often put to their severest test. "The purity and integrity of the judicial process ought to be protected against any taint of suspicion to the end that the public and litigants may have the highest confidence in the integrity and fairness of the courts"—*Wolfe, J.,* in *Haslam v. Morrison,* 113 Utah 14, 190 Pac. 2d 520.

To like effect is the announcement of the Michigan Court in *Talbert v. Muskegon Const. Co.,* 305 Mich. 345, 9 N.W. 2d 572: "One of the fundamental rights of a litigant under our judicial system is that he shall be entitled to a hearing before a court to which no taint or prejudice is attached." To which the language of the Florida Court in *State ex rel. Davis v. Parks,* 141 Fla. 516, 194 So. 613, may be added: "It is the duty of courts to scrupulously guard this right and to refrain from attempting to exercise jurisdiction in any matter where his qualification to do so is seriously brought in question."

Again in *Kentucky Journal Publishing Co. v. Gaines,* 139 Ky. 747, 110 S.W. 268—a case arising out of a political campaign in which the judge made speeches for the candidate opposed by the defendant—it was said: "It is but the utterance of a legal platitude to say that it is of the utmost importance that every man should have a fair and impartial trial of his case, and that to secure this great boon two things are absolutely essential; an impartial jury and an unbiased judge. But we go further, and say that it is also important that every man should know that he has had a fair and impartial trial; or, at least, that he should have no just ground for the suspicion that he has not had such a trial."

The central allegation of the petition and affidavit filed herein is that the resident judge "personally came to the rural sections of Madison County immediately prior to the last political campaign in November 1950 and took an active part in the campaign for the plaintiff and other Democratic candidates." If this averment be true,—and it is not denied or challenged on the record—we think it must be conceded the resident judge was disqualified to hear the case, and he should have granted the petition for an order of recusation. *State ex rel. La Russa v. Himes,* 144 Fla. 145, 197 So. 762. Characterizing the entire petition and affidavit as "scurrilous and untrue" and striking it from the record, in and by the order of 9 December, 1950, doubtless increased or heightened rather than

lessened or allayed, the defendants' fears and suspicious of bias or prejudice. *Kentucky Journal Publishing Co. v. Gaines, supra.*

## II.  THE JUDGMENT OF JUDGE RUDISILL.

There is no finding of contempt in Judge Rudisill's judgment, nor was he authorized to make any under the order of transfer, hence it is without sufficient foundation to support the imposition of the fines.

In contempt proceedings it is essential that the facts upon which the contempt is based should be found and filed in the proceedings, especially the facts concerning the purpose and object of the contemner, and the judgment should be based on the facts so found. *In re Odum,* 133 N.C. 250, 45 S.E. 569.

Since the unchallenged petition for recusation, *prima facie* at least, sets out a legal objection to prejudice, the order of 9 December, 1950, and all subsequent orders and judgments entered in the cause or proceeding will be vacated, and the matters remanded for further consideration not inconsistent herewith.  48 C.J.S. 1105.

Error and remanded.