STATE OF NORTH CAROLINA v. ISMAEL VEGA

No. 784SC1003

(Filed 20 March 1979)

1. **Judges § 5— failure of judge to disqualify self—no error**

   In a prosecution of defendant for second degree murder and child abuse, the trial court did not err in failing to disqualify himself, though he was the presiding judge at an earlier trial when a mistrial was declared because of the emotional outburst by decedent's mother, since there was no evidence of any prejudice or bias displayed by the presiding judge.

2. **Criminal Law § 34.7; Homicide § 15.2— murder of child—prior mistreatment— evidence admissible**

   In a prosecution for second degree murder and child abuse, evidence of child abuse did not prejudice defendant's trial as it related to second degree murder, since evidence of previous acts of physical abuse were competent to show defendant's predisposition to commit the violent act complained of in the indictment, and the evidence of child abuse was competent to show the state of mind necessary to establish malice, an essential element of second degree murder.

3. **Criminal Law § 92.2— second degree murder and child abuse—jurisdiction of court to hear misdemeanor charge**

   In a prosecution for second degree murder and child abuse, defendant's contention that the superior court was without jurisdiction to hear the misdemeanor charge of child abuse was without merit since the crimes charged were obviously continuing criminal acts which permit the admission in evidence of each in the trial of the other, and the acts perpetrated by defendant which led to the misdemeanor charge of child abuse were the same acts and transactions which also resulted in the death of the child. G.S. 15A-926.

4. **Homicide § 21.7; Parent and Child § 2.2— abuse and murder of child—sufficiency of evidence**

   In a prosecution for murder and child abuse, evidence was sufficient to be submitted to the jury where it tended to show that the deceased child was in good health when placed with defendant's wife; she was thereafter in the care and custody of both defendant and his wife as observed by a number of

witnesses up to and at the time of her death; the injuries of the child observed by physicians were not natural, accidentally caused or self-inflicted; the cause of death was subdural hemorrhage and was due to a blow or blows to the head; and defendant admitted that he had beaten the child more than once.

5. **Homicide § 30.2— voluntary manslaughter submitted as lesser included offense —error favorable to defendant**

In a prosecution for second degree murder and child abuse, the trial court erred in submitting voluntary manslaughter as a possible verdict, since in this case involving the death of a child from the "battered child syndrome" where there was a great disparity in age and size between the victim and her slayer, and particularly where the slayer stood *in loco parentis* with the child, as a matter of law adequate provocation could not be found to exist so as to justify submission of voluntary manslaughter; however, such error was favorable to defendant and not reversible.

APPEAL by defendant from *Small, Judge*. Judgment entered 8 July 1978 in Superior Court, ONSLOW County. Heard in the Court of Appeals 7 February 1979.

In separate bills of indictment defendant was charged with second degree murder and child abuse. The cases were consolidated for trial.

State's evidence tended to show that on 11 January 1978 Maria Aponte of New York City left her child Maria in the care and supervision of Maritza Vega. Mrs. Vega had asked for the child so she could visit with her when she came to North Carolina to visit her husband Ismael Vega who was in the Marine Corps. Her mother stated that in January 1978 Maria weighed 38 pounds, was 42 inches tall, in perfect health and did not have any bruises on her body.

Paul Reed of the United States Marine Corps testified that he knew the defendant, Ismael Vega, for one month when they both lived at Mann's Trailer Park in Onslow County. Reed further testified that during that period of time a small Puerto Rican girl, identified by photograph as the deceased, was living with the Vegas. Charles Lee Thompson, Jr. of the United States Marine Corps stated that during January of 1978 he lived in Mann's Trailer Park with his wife. During that time the Vegas lived with them and were accompanied by a small Puerto Rican girl. Theresa Ann Foster testified that she lived at Yopp's Trailer Park in Sneads Ferry and that late in January of 1978, Ismael Vega came to her trailer to pick up a set of keys which the previous witness

had left for him. At that time, Mr. Vega was accompanied by a small girl who did not speak English. Don Green, a parts technician with the Marine Corps Exchange, testified that he did the maintenance work at Garland Yopp's Trailer Park, and that on February 10, he visited the trailer occupied by the Vegas to repair a heater. The witness testified that he had a short conversation with the defendant concerning the heater and something was said about the little child being sick with the flu. The witness further testified that the heater in the trailer was a standard oil heater and that the exterior of the furnace did not become hot while the heater was operating. Garland Yopp, the owner of Yopp's Trailer Park, testified that early in February he had the occasion to visit the Vegas' trailer where he noticed a little girl on the couch completely covered up. The next day, the witness testified that the defendant came to his store and told him that the little girl was running a fever and that he wanted to buy some aspirin. The witness asked the defendant if the little girl needed a doctor and the defendant replied he didn't think so.

Ann Seals, a resident at Yopp's Trailer Park, stated that, on February 13, in response to a request from Mrs. Vega, she, Nancy Achuff, Mike Lupkin and Kenneth Griffin went to the Vegas' trailer. When she went into the bedroom she observed a little girl wearing a pair of red shorts. The girl's eyes were rolled back into her head, and one side of her face appeared to have cigarette burns on it. Nancy Achuff testified that she saw the girl in the bedroom, and that the girl had several burns on the left side of her face. She stated that the girl's legs were burned from her feet to her knees and her arms were burned from her knuckles to her elbows. She testified that when Kenneth Griffin attempted to give mouth to mouth resuscitation to the girl, he had to cut and remove her shirt with a knife. After the little girl's shirt was removed, the witness noted that the girl's chest was bruised. David Brown of the United States Marine Corps testified that on the evening of February 13, Ann Seals came to his house crying and said that the little girl was dying in trailer No. 5 and asked him if he would take the girl to the hospital. The witness testified that he carried the girl directly to the Naval Hospital.

Dr. Vern Meyer, a physician and pediatrician employed with the United States Navy, testified that he was on duty in the emergency room of the Naval Hospital on February 13, 1978. At

that time he examined a child brought into the emergency room. The witness stated that when he first saw the child, she had a foul odor, was dirty, unkept and obviously dead. Upon examination, the witness saw the child had abrasions over her body with scar formation on the knees, chest and both hands. He further saw bruises on the chest and pelvic area, scar formation on the left side of the face and hair loss on the back of the head. He noticed bruises on the face around the eye sockets, bruises behind both ears, burns, scratches and bruises of varying age on her back, arms and shins. He further testified that he had examined thousands of children during his professional career, and it was his opinion that the abrasions and burns which he observed on the dead child were not burns and bruises sustained by a normal child during everyday activity. He further stated that there was no indication that medical therapy had ever been instituted for the child. The witness also testified that the injuries sustained by the child were, in his opinion, not accidental in nature, and they could not have been self-inflicted. Dr. Meyer interviewed the defendant, and the defendant told him that he had hit the child in the past and had on several occasions locked her up in a room. The defendant said that he did not know how many times, but that he had beaten the child more than once. After concluding the examination of the dead child and after the conversation with the defendant, Dr. Meyer made a diagnosis of Battered Child Syndrome, or child abuse.

Dr. Walter Gable, a pathologist at Onslow Memorial Hospital, testified that he observed on the dead child the same external bruises, scratches, burns and abrasions first noticed by Dr. Meyer, and he also concurred with Dr. Meyer's diagnosis that the child suffered from Battered Child Syndrome, or child abuse. Dr. Gable further testified that, in his opinion, the injuries sustained by the child could not have been caused accidentally. Dr. Gable also testified that his internal examination of the child's body during the autopsy revealed that the immediate cause of death to the child was blows to the child's head causing hemorrhage and brain swelling.

Also introduced into evidence by the State were the child's bloody clothing hidden in a laundry bag.

The defendant offered no evidence.

The defendant was convicted of voluntary manslaughter and child abuse and from a sentence of imprisonment, the defendant appeals.

*Attorney General Edmisten, by Associate Attorney Thomas H. Davis, Jr., for the State.*

*Frazier & Moore, by Thomasine E. Moore, for the defendant.*

MARTIN (Robert M.), Judge.

On appeal, defendant contends that the trial court erred in (1) failing to disqualify himself as he was the presiding judge at an earlier trial when a mistrial was declared; (2) failure to sever the charges, thus allowing the State to introduce collateral facts; (3) denying defendant's motion to sever on the grounds that the court was without jurisdiction to hear misdemeanor charge of child abuse; (4) admitting the introduction of allegedly prejudicial photographs; (5) denying motion for nonsuit; (6) instructing the jury on "acting in concert" in the absence of evidence of conspiracy; and (7) denying motion to set aside verdict, motion for new trial and arrest of judgment. With regard to each of these contentions we find no error.

[1] Defendant contends that since the trial judge at the first trial, when declaring mistrial, ruled that the emotional outburst heard by the jury could either consciously or subconsciously prevent them from rendering a verdict solely on the evidence, then this same finding should also apply to the trial judge. This assignment of error is without merit.

G.S. 15A-1223 states that the judge, upon motion of either the State or the defendant, must disqualify himself from presiding over a criminal trial for any of the following reasons:

1. If the judge is prejudiced against the moving party or in favor of the adverse party; or

2. If the judge is a witness for or against anyone of the parties in the case; or

3. If the judge is closely related to the defendant by blood or marriage; or

4. If for any other reason the judge is unable to perform the duties required of him in an impartial manner.

There is no evidence in the record elicited by defense counsel or any other party of any prejudice or bias displayed by the presiding judge. There is no showing that in the previous trial the judge reacted strongly to the outburst of the decedent's mother, nor is there any showing that the judge displayed "marked personal feeling" toward the accused. *See In re Paul*, 28 N.C. App. 610, 222 S.E. 2d 479 (1976).

The trial judge, answering the charges raised by the defense counsel, stated that he did not know of any reason why he should disqualify himself. Furthermore, we note that the record discloses the motion for disqualification was made the day the trial began and that no good cause was shown for the counsel's failure to file his motion within the time limit set forth in G.S. 15A-1223(d) which requires that the motion to disqualify a judge must be filed no less than five days before the time the case is called for trial.

[2] Defendant contends that the introduction of collateral matters with respect to child abuse prejudiced the defendant's trial as it related to the felony of second degree murder. Defendant contends that the cause of the child's death was a brain hemorrhage and the bruises and burns observed over part of the child's body were not symptoms which caused death and its admission in evidence was prejudicial to defendant. We disagree. In *State v. Fowler*, 230 N.C. 470, 53 S.E. 2d 853 (1949), Chief Justice Stacy, speaking for the Court, stated:

> Proof of the commission of other like offenses is competent to show the *quo animo*, intent, designed, guilty knowledge or scienter or to make out the *res gestae*, or to exhibit a chain of circumstances in respect of the matter on trial, when such crimes are so connected with the offense charged as to throw light upon one or more of these questions. [Citations omitted.] *Id*. at p. 473, 53 S.E. 2d 855.

The victim was a five-year-old child who died as a result of injuries to her head which could have been caused by a beating administered on one or several occasions by the defendant. Previous acts of physical abuse are competent to show defendant's predisposition to commit the violent act complained of in the indictment. Moreover, the evidence of child abuse was competent to show the state of mind necessary to establish malice, an

essential element of second degree murder. *See State v. Drake*, 8 N.C. App. 214, 174 S.E. 2d 132 (1970).

> Where a specific mental intent or state is an essential element of the crime charged, evidence may be offered of such facts and declarations of the accused as tend to establish the requisite mental intent or state, even though the evidence discloses the commission of another offense by the accused. [Citations omitted.] *State v. McClain*, 240 N.C. 171, 175, 81 S.E. 2d 364, 366 (1954).

Thus, the acts which tend to show child abuse also tend to show intent and design of the defendant with respect to the death of the child and are competent in evidence.

[3] We disagree with defendant that the court was without jurisdiction to hear the misdemeanor charge of child abuse. G.S. 15A-926 provides that:

> Two or more offenses may be found in one pleading or for trial when the offenses, whether felonies or misdemeanors or both, are based on the same act or transaction or in a series of acts or tranactions connected together or constituting parts of a single scheme or plan.

The crimes charged were obviously continuing criminal acts which permit the admission in evidence of each in the trial of the other. The acts perpetrated by the defendant which led to the misdemeanor charge of child abuse were the same acts and transactions which also resulted in the death of the child. Therefore, the two offenses were properly joined under G.S. 15A-926.

> The defendant's contention that the court erred by allowing into evidence photographs of the deceased is without merit and his assignments of error based thereon are denied.

[4] Defendant contends that the court erred in denying his motion for nonsuit. This assignment of error is without merit and is overruled. The uncontradicted evidence tends to show that the deceased child was in good health when placed with defendant's wife. She was thereafter in the care and custody of both defendant and his wife as observed by a number of witnesses up to and at the time of her death. The injuries observed by the physicians were neither natural or accidently caused or self-inflicted. Accord-

ing to the pathologist, the cause of death was subdural hemorrhage and was due to a blow or blows to the head. A blow by a hand or fist could cause a cerebral hemorrhage. The defendant admitted that he had beaten the child more than once. The evidence for the State, considered in the light most favorable to it, was sufficient to withstand the motion for nonsuit.

The inference that defendant may have acted in concert with another person (*i.e.* his wife) in the act(s) of physical abuse resulting in the death of the deceased sufficiently supported the court's instructions on the principle of acting in concert and was without error.

[5] We are of the opinion that it was error for the trial judge to instruct the jury on voluntary manslaughter and to submit it to the jury for their deliberation. Voluntary manslaughter is usually defined as an intentional killing, done without premeditation or deliberation, and without malice. The element of malice, which is a necessary component of second degree murder, is usually negatived in the voluntary manslaughter context by either heat of passion suddenly aroused upon adequate provocation or by the situation where the defendant has an imperfect right of self-defense. *See, State v. Benge*, 272 N.C. 261, 158 S.E. 2d 70 (1967); *State v. Potter*, 295 N.C. 126, 244 S.E. 2d 397 (1978). In this case, involving the death of a child from the so-called "battered child" syndrome, where there was a great disparity in age and size between the victim and her slayer, and particularly where the slayer stood *in loco parentis* with the child, we are of the opinion that as a matter of law adequate provocation could not be found to exist so as to justify submission of voluntary manslaughter where the evidence showed that the defendant beat and abused a child unto its death. *See State v. Wilkerson*, 295 N.C. 559, 247 S.E. 2d 905 (1978); *also see, State v. Trott*, 190 N.C. 674, 130 S.E. 627 (1925).

In the present case there is abundant evidence that the child had been beaten viciously, and had been severely burned, these punishments ostensibly being made to "discipline" the child. The evidence would have been ample to support a conviction of second degree murder. There was no evidence before the court adequate in law which would have justified submission of voluntary manslaughter as a lesser included offense. The trial court gave

the jury an opportunity which legally they should not have had, to find defendant guilty of a lesser offense. Having been found guilty of a lesser included offense not raised by the evidence, defendant could not have been prejudiced by its submission. The error was manifestly favorable to the defendant and is not reversible. *State v. Stephens*, 244 N.C. 380, 93 S.E. 2d 431 (1956).

The remaining assignments of error brought forward by defendant are without merit. Accordingly, they are overruled.

In the trial we find no prejudicial error.

No error.

Judges MITCHELL and ERWIN concur.