STATE OF NORTH CAROLINA v. GERALD BONNER HILL

No. 7916SC590

(Filed 19 February 1980)

1. **Judges § 5— motion for recusation not referred to another judge—error**

The trial judge erred in failing to refer a motion for recusation to another judge for consideration and disposition where defendant testified at the criminal trial of a fellow officer of the Lumberton Housing Authority; im-

mediately after his testimony the trial judge stated that defendant had implicated himself in that trial; upon being informed that defendant had six cases pending against him in superior court and that his bond was set at $2500 in all six cases, the trial judge increased defendant's bond because he thought it was unusually low and increased it without any reference as to whether or not defendant would be present at his trial; and a reasonable person could conclude that the judge had formed an opinion against defendant.

2. **Constitutional Law § 30— defendant's statement to third person—disclosure by State not required—failure to disclose documents—defendant prejudiced**

Defendant was not prejudiced by the State's failure to disclose prior to trial oral statements made by defendant to a third party witness, but defendant was prejudiced by the State's failure to disclose documents which the State intended to use at trial, including an audit of the housing authority of which defendant was executive director, and the fact that the State did not offer the documents into evidence but merely used them on cross-examination did not alter the fact that harm resulted from the nondisclosure, since the primary effect of the State's improper nondisclosure was to deny defendant a meaningful opportunity to prepare his defense.

3. **Criminal Law § 34.7— obtaining money by false pretense—defendant's approval of other false billings—admissibility to show intent**

In a prosecution of defendant, the former executive director of a city housing authority, for aiding and abetting in the obtaining of property by false pretenses and for corporate malfeasance, the trial court did not err in permitting testimony by a witness which tended to show other instances of defendant's tacit approval of false billings, since such evidence was relevant and admissible on the issue of intent to defraud.

4. **False Pretense § 3.1— director of housing authority—obtaining money by false pretenses—sufficiency of evidence**

In a prosecution of defendant, former executive director of a city housing authority, for aiding and abetting in the obtaining of property by false pretenses, evidence was sufficient to be submitted to the jury where it tended to show that defendant approved payment on freight bills when the freight bills had been prepaid; furthermore, there was no merit to defendant's contention that his knowledge of the fraud would be imputed to the corporation and he thus could not be guilty of aiding and abetting the obtaining of property by false pretenses because the corporation did not rely on the false representation, since notice to or knowledge of an agent will not be imputed to his principal where the person claiming the benefit of the notice or those whom he represents colluded with the agent to defraud his principal, and defendant's knowledge thus would not be imputed to the housing authority.

5. **Indictment and Warrant § 17.1— aiding and abetting obtaining of property by false pretenses—no variance between indictment and proof**

There was no fatal variance between indictments charging aiding and abetting the obtaining of property by false pretenses and evidence at trial where all the evidence tended to show that the person named in the indictments was the person aided and abetted, and all the evidence tended to show

that he submitted invoices for bills which had already been paid with the intent to benefit himself.

**6. Indictment and Warrant § 9.9 — corporate malfeasance charged — allegation of intent improper — indictments quashed**

Indictments charging defendant with corporate malfeasance in violation of G.S. 14-254 must be quashed where the statute required that they allege an intent to injure, defraud, or deceive an officer of the corporation, but the indictments in this case alleged an intent "to defraud or to deceive the said Housing Authority of the City of Lumberton, North Carolina."

**7. Criminal Law § 111.1 — reading indictments to jury — defendant prejudiced**

The trial court erred in reading the indictments to the jury at the very beginning of the trial and during the charge to the jury at the close of the evidence. G.S. 15A-1213.

**8. False Pretense § 3 — aiding and abetting in obtaining money by false pretense — evidence of lack of felonious intent — exclusion error**

In a prosecution of defendant, the former executive director of a city housing authority, for aiding and abetting in the obtaining of property by false pretenses where the evidence tended to show that defendant approved the payment of freight bills to a fellow employee when the freight bills were prepaid, the trial court erred in preventing defendant from eliciting the fellow employee's testimony that he regarded the money "justly due him," since such testimony was manifestly competent to show the absence of felonious intent to defraud on the part of defendant.

**9. Indictment and Warrant § 8.4 — aiding and abetting false pretenses — malfeasance by corporate officer — election between offenses not required**

The trial court did not err in refusing to require the State to elect between the charges of aiding and abetting the obtaining of property by false pretenses and charges of malfeasance by a corporate officer, since the offenses were not the same both in fact and in law, and each offense required proof of an element not common to the other.

APPEAL by defendant from *Gavin, Judge.* Judgments entered 26 January 1979 in Superior Court, ROBESON County. Heard in the Court of Appeals 14 November 1979.

Defendant, a former Executive Director of the Housing Authority of the City of Lumberton, was indicted on three counts of aiding and abetting William Sammy Britt in the obtaining of property belonging to the Housing Authority by false pretenses and on three counts of corporate malfeasance in violation of G.S. 14-254 arising from the same transactions. The jury returned a verdict of guilty as charged on all six counts. From the sentences imposed, defendant appeals.

*Attorney General Edmisten, by Assistant Attorney General Rudolph A. Ashton III, for the State.*

*I. Murchison Biggs; and Page & Britt, by W. Earl Britt, for defendant appellant.*

ERWIN, Judge.

Defendant brings forth numerous assignments of error. For clarity's sake, we will address them in order of convenience.

## Motion for Recusation

[1] Defendant contends that the trial court erred in not requesting another judge to consider his motion for recusation. We agree.

The record reveals that immediately after defendant had finished testifying at the criminal trial of another officer of the Lumberton Housing Authority (*State v. Lamb*, COA7916SC571, appealed to this Court and opinion filed December 1979), Judge Gavin, based on defendant's testimony, stated that defendant had implicated himself in that trial. Upon being informed that defendant had six cases pending against him in Superior Court and that his bond was set at $2,500 in all six cases, Judge Gavin increased defendant's bond, because he thought it was unusually low.

G.S. 15A-1223(b) provides:

"(b) A judge, on motion of the State or the defendant, must disqualify himself from presiding over a criminal trial or other criminal proceeding if he is:

(1) Prejudiced against the moving party or in favor of the adverse party; or

(2) A witness for or against one of the parties in the case; or

(3) Closely related to the defendant by blood or marriage; or

(4) For any other reason unable to perform the duties required of him in an impartial manner."

While G.S. 15A-1223(b) provides the instances in which a judge must disqualify himself, it does not address the question of whether he is the proper party to hear the motion for recusation in all instances.

Canon 3C(1)(a) of the North Carolina Code of Judicial Conduct provides:

"C. Disqualification.

    (1) A judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned, including but not limited to instances where:

        (a) He has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceedings . . ."

In *Bank v. Gillespie*, 291 N.C. 303, 311, 230 S.E. 2d 375, 380 (1976), our Supreme Court, speaking on the subject of recusation, stated:

"We are, however, constrained to observe that when the trial judge found sufficient force in the allegations contained in defendant's motion to proceed to find facts, he should have either disqualified himself or referred the matter to another judge before whom he could have filed affidavits in reply or sought permission to give oral testimony. Obviously it was not proper for this trial judge to find facts so as to rule on his own qualification to preside when the record contained no evidence to support his findings. *Ponder v. Davis*, 233 N.C. 699, 65 S.E. 2d 356.

    In this connection, we think the language found in *Kentucky Journal Publishing Co. v. Gaines*, 139 Ky. 747, 110 S.W. 268, quoted in *Ponder v. Davis, supra*, warrants repeating:

    . . . 'It is but the utterance of a legal platitude to say that it is of the utmost importance that every man should have a fair and impartial trial of his case, and that to secure this great boon two things are absolutely essential; an impartial jury and an unbiased judge. But we go further, and say that it is also important that every man should know that he has had a fair and impar-

tial trial; or, at least, that he should have no just ground for the suspicion that he has not had such a trial.' "

Recently, in *McClendon v. Clinard*, 38 N.C. App. 353, 247 S.E. 2d 783 (1978), we interpreted *Gillespie* as requiring a trial judge to refer a motion to recuse to another judge for consideration and disposition when "a reasonable man knowing all the circumstances would have doubts about the judge's ability to rule on the motion to recuse in an impartial manner." *Id.* at 356, 247 S.E. 2d at 785. Applying this test to the facts of the instant case, we hold that the trial court erred in failing to refer the motion for recusation to another judge for consideration and disposition. Here, Judge Gavin increased defendant's bond on his own motion under the conditions indicated above. The record clearly shows that Judge Gavin was concerned about defendant's implications in the Lamb case, which to a reasonable person would mean that the judge had formed an opinion against defendant. He complained about defendant's bond and increased it without any reference as to whether or not defendant would be present at his trial. Our decision in *State v. Vega*, 40 N.C. App. 326, 253 S.E. 2d 94, *appeal dismissed*, 297 N.C. 457, 256 S.E. 2d 809 (1979), is in accord with our decision today.

## Motion of Discovery

Prior to trial, defendant made a motion for discovery of oral statements made by defendant which the State intended to offer in evidence, for discovery of a list of all witnesses that the State intended to call to give testimony at trial, and for discovery of any books, papers, documents, or records in the possession of the State and intended to be used by the State in any manner at trial. After being ordered to disclose the above, the State stipulated that there were no oral statements made by defendant which it intended to offer in evidence and identified the documents intended to be used by the State in any manner in the trial. During the trial, the State, through its witnesses' testimony, introduced statements made by defendant and used several undisclosed documents on cross-examination of defendant and his witnesses. Defendant assigns error.

[2] The State did not err in failing to disclose the oral statements made by defendant to a third-party witness. G.S.

15A-904(a); *State v. Crews*, 296 N.C. 607, 252 S.E. 2d 745 (1979). In
*State v. Crews, supra,* our Supreme Court stated that the intent
of our Legislature was to restrict defendant's discovery of his
oral statements to those made by him to persons acting on behalf
of the State. In stipulating that it had no oral statements made by
defendant which the State intended to offer, the State made it
clear that it was acting pursuant to the trial court's order of
discovery. Our Supreme Court's decision in *State v. Hardy*, 293
N.C. 105, 235 S.E. 2d 828 (1977), makes it clear that the trial court
had no authority to order discovery of statements made by de-
fendant to third parties not acting on behalf of the State. We find
no error in the State's refusal to disclose such statements.
However, we do find error in the State's failure to disclose all
documents it intended to use at trial. G.S. 15A-903 provides in
pertinent part:

> "§ 15A-903. *Disclosure of evidence by the State—infor-
> mation subject to disclosure.—*
>
> *       *       *
>
> (d) Documents and Tangible Objects.—Upon motion of
> the defendant, the court must order the solicitor to permit
> the defendant to inspect and copy or photograph books,
> papers, documents, photographs, motion pictures, mechanical
> or electronic recordings, tangible objects, or copies or por-
> tions thereof which are within the possession, custody, or
> control of the State and which are material to the prepara-
> tion of his defense, are intended for use by the State as
> evidence at the trial, or were obtained from or belong to the
> defendant."

The State contends that since it did not offer the documents into
evidence but merely used them on cross-examination, no harm oc-
curred in its failure to disclose. This argument was rejected by
our Supreme Court in an analogous situation in *State v. Stevens*,
295 N.C. 21, 36-37, 243 S.E. 2d 771, 780 (1978), where the Court
stated:

> "It is implicit in the district attorney's statement to the
> court that his intention not to offer the questioned evidence
> was conditional. Obviously, he did intend to use the
> statements on rebuttal if defendant took the stand and gave

testimony inconsistent with them. It is equally obvious that the district attorney could not know whether defendant would take the stand until defendant either did so or rested his case without having testified. This uncertainty, however, differs little from that which surrounds many decisions the prosecutor must make with reference to the introduction of available evidence. To adopt the district attorney's analysis of G.S. 15A-903(a)(2) would mean that a judge could rarely hold that a district attorney had intended to use a withheld statement at trial."

In the instant case, disclosure of the documents in the possession of the State and which were intended to be used by the State in any manner was also essential to the preparation of defendant's defense. For example, the State was allowed to cross-examine Mr. Patterson, an employee of the Department of Housing and Urban Development, from a twenty-page audit of the Lumberton Housing Authority dated 13 December 1974 which dealt with alleged irregularities in the Housing Authority's operations. Moreover, the State was allowed to use undisclosed documents in cross-examining defendant as to alleged, unauthorized expenditures during his several years as Executive Director of the Housing Authority as follows:

"Q. Mr. Hill, I ask you to look at the sheaf of documents. In your hand, on top, do you have a check to Sealey's 66 Service, your check No. 5032, in the amount of $841.47 and supporting documents attached thereto?

OBJECTION. OVERRULED. EXCEPTION NO. 153

A. I see the check. Can I take the time to look at the documents?

Q. If you will look at Sealey's billing 536 dated 6/3/74.

OBJECTION. OVERRULED. EXCEPTION NO. 154

*    *    *

Q. The insurance policies that were carried by the Housing Authority would demonstrate the number of trucks, wouldn't it sir?

OBJECTION. OVERRULED. EXCEPTION NO. 169

Q. Would you look through these insurance policies?

OBJECTION. OVERRULED. EXCEPTION NO. 170

A. You want me to look through them all.

Q. I want you to satisfy yourself as to how many trucks you had?

OBJECTION. OVERRULED. EXCEPTION NO. 171

Q. Would it help you to speed up your looking there if you had access to your gas records?

OBJECTION. OVERRULED. EXCEPTION NO. 172

A. I don't even recognize that item. What is it?

Q. I'm asking you. Would it help you to speed up what you are doing there to look at the gas records?

OBJECTION. OVERRULED. EXCEPTION NO. 173

\* \* \*

Q. I will ask you to look through there on Sealey's invoice dated 20 December 1974 and I will ask you if he did not accomplish a brake job?

OBJECTION. OVERRULED. EXCEPTION NO. 178

WITNESS: It says 'turn drums'. That does not necessarily mean a brake job.

\* \* \*

Q. Here's the point. Look over here on the other invoice, 771, please sir, 772. 771, a brake job, $210.90 on the identical vehicle. This is one billed out on the 14th of January 1975. Is that not correct?

OBJECTION. OVERRULED. EXCEPTION NO. 181

A. It appears to be that, yes, sir.

Q. Wouldn't you think Mr. Sealey would guarantee his work for a big customer like the Housing Authority of the City of Lumberton?

OBJECTION. OVERRULED. EXCEPTION NO. 182

A. Yes, I would assume he would do so.

Q. All right, can you explain why you would have one brake job on the 20th of December 1974 and an identical brake job on the 14th of January 1975?

OBJECTION. OVERRULED. EXCEPTION NO. 183

\* \* \*

Q. Mr. Hill, can you tell us about a $52,080.58 overpayment to General Building and Masonry Contractors, Inc., on the project NC14-4 sometime prior to March 31, 1973?

OBJECTION. OVERRULED. EXCEPTION NO. 185

A. May I see it.

I am not familiar with a document, a report of audit dated March 31, 1973, by C. B. Scoggins, Jr., a certified public accountant, published for the Housing Authority of the City of Lumberton, North Carolina. I know that it exists. I have seen it but not since that time.

\* \* \*

Q. You don't recall an overpayment of $52,000.00 that was never gotten back for the City?

OBJECTION. OVERRULED. EXCEPTION NO. 189

A. I remember an overpayment. If you will let me look at it, I will be glad to verify it.

Q. I will let you look at it in a minute. Have you not testified that you were very busy and that you couldn't keep up with things up there at the Housing Authority?

OBJECTION. OVERRULED. EXCEPTION NO. 190

A. No, I have not testified to that.

Q. Well, then, you remember an overpayment of $52,000.00 don't you, sir?

OBJECTION. OVERRULED. EXCEPTION NO. 191

A. I remember an overpayment.

No, I don't remember whether it was $10,000.00 or $52,000.00 or $100,000.00. I don't recall exactly how much it was.

Q. Well, if it had been $100,000 overpayment would you have remembered?

OBJECTION. OVERRULED. EXCEPTION NO. 192

A. Not as to exact figures, no.

I will be most happy to try to recall it and explain it if you will let me see it.

Q. Do you recall seeing this item here, Report of Audit submitted by C. B. Scoggins, Jr., CPA here in Lumberton?

OBJECTION. OVERRULED. EXCEPTION NO. 193

A. Yes, sir."

The primary effect of the State's improper nondisclosure of documents to be used at trial was to deny defendant a meaningful opportunity to prepare his defense.

Evidence of Independent Criminal Offenses

[3] Defendant contends that the trial court erred in allowing the State to introduce the testimony of John Wishart Bennett concerning his purported criminal transactions with defendant and in not granting his motion to nonsuit. We find no error.

It is the law of this State that evidence of one offense cannot be given against a defendant to prove that he is guilty of another. However, an exception to the general rule exists when the purpose of offering the evidence of other independent offenses is to prove *quo animo*, intent, design, or guilty knowledge. *State v. Walton*, 114 N.C. 783, 18 S.E. 945 (1894).

In *State v. Walton, supra*, defendant was charged with obtaining money under false pretenses by falsely pretending that a certain paper writing was a true and genuine order for the payment of money and that he owned or had right to transfer it. At trial, the State was allowed to offer evidence of similar transactions on the part of defendant. In the present case, the State was allowed to offer into evidence the testimony of John Wishart Ben-

nett which tended to show other instances of defendant's tacit approval of false billings. This evidence was relevant and admissible on the issues of intent to defraud in the aiding and abetting in the obtaining of property by false pretenses charges and the corporate malfeasance charges.

### Motion for Judgment of Nonsuit

[4] The aiding and abetting in the obtaining of property by false pretenses offenses for which defendant was charged occurred prior to the amendment of G.S. 14-100. In determining the propriety of disallowing defendant's motion to nonsuit on these charges, we must look at the crime's elements as it then existed. *State v. Hart*, 287 N.C. 76, 213 S.E. 2d 291 (1975); *State v. Melton*, 7 N.C. App. 721, 173 S.E. 2d 610 (1970).

Prior to the amendment of G.S. 14-100, a motion for nonsuit of a charge of obtaining property by false pretense had to be denied if there were evidence which, if believed, would establish or from which the jury could reasonably infer that the defendant (1) obtained value from another without compensation, (2) by a false representation of a subsisting fact, (3) which was calculated and intended to deceive, and (4) did in fact deceive. *State v. Agnew*, 294 N.C. 382, 241 S.E. 2d 684 (1978), *cert. denied*, 439 U.S. 830, 58 L.Ed. 2d 124, 99 S.Ct. 107 (1978).

To sustain a conviction of the defendant for aiding and abetting,

> "the State's evidence must be sufficient to support a finding that the defendant was present, actually or constructively, with the intent to aid the perpetrator in the commission of the offense should his assistance become necessary and that such intent was communicated to the actual perpetrator. Such communication of intent to aid, if needed, does not, however, have to be shown by express words of the defendant, but may be inferred from his actions and from his relation to the actual perpetrator."

*State v. Rankin*, 284 N.C. 219, 223, 200 S.E. 2d 182, 185 (1973).

> "Upon motion for nonsuit, all the evidence admitted, whether competent or incompetent, including that offered by defendant which is favorable to the state, must be considered in the light

most favorable to the state, and the state is entitled to every reasonable intendment thereon and every reasonable inference therefrom." (Footnotes omitted.) 4 Strong's N.C. Index 3d, Criminal Law, § 104, p. 541.

The State's evidence, when viewed in the light most favorable to it, tends to show that defendant had placed Britt on the Lumberton Housing Authority's payroll at full pay, although he did not work a full forty hours. In return, Britt agreed to acquire materials for the Housing Authority through his tile company. When this arrangement was unilaterally terminated by Hill, he agreed to help Britt secure the difference in the cost of materials. Britt subsequently presented prepaid freight bills to Hill and demanded payment in that amount. Defendant Hill asked Britt if he paid him for the freight, would he be satisfied. After Britt said that he would be satisfied, Hill placed his arms around him, told Joan Bacot, an employee of the Housing Authority, to pay Britt the original freight bill then presented and two others to be subsequently presented. After Ms. Bacot prepared the vouchers for payment, on each occasion, defendant Hill signed them authorizing payment. When Ms. Bacot discovered that the freight bills had been prepaid, defendant informed her that she need not be concerned with it and that they would continue to pay Mr. Britt's invoices, even though the Housing Authority had already prepaid the freight. We hold that when viewed in the light most favorable, this evidence was sufficient to withstand defendant's motion to nonsuit on the charge of aiding and abetting the obtaining of property by false pretenses. Defendant sets forth several arguments averring a lack of intent to defraud and a lack of deception in fact. Whether or not defendant intended to deceive the Housing Authority was a question for the jury to decide. *See State v. Walton, supra.* The State, through its witness Bennett, presented competent evidence to establish the existence of this required element. Similarly, competent evidence was presented to show a reliance on defendant's misrepresentation of fact as then required by G.S. 14-100. Defendant would have us hold that since he knew of the fraud, his knowledge would be imputed to the corporation, and thus, he could not be guilty of aiding and abetting the obtaining of property by false pretenses, because the corporation did not rely on the false representation. We reject this argument.

Notice to or knowledge of an agent will not be imputed to his principal where the person claiming the benefit of the notice or those whom he represents colluded with the agent to defraud his principal. *Jenkins v. Renfrow*, 151 N.C. 323, 66 S.E. 212 (1909). Thus, defendant's knowledge would not be imputed to the Housing Authority. *See State v. Agnew, supra; accord, Rand v. Commonwealth*, 176 Ky. 343, 195 S.W. 802 (1917).

The State presented evidence showing that an agent of the Housing Authority had in fact been deceived. This was sufficient, *State v. Grier*, 35 N.C. App. 119, 239 S.E. 2d 870 (1978), and the court did not err in allowing the agent to so testify.

## Variance

[5] Defendant contends that a fatal variance exists in the indictments on the charges of aiding and abetting the obtaining of property by false pretenses, in that Britt Tile Company and not William Sammy Britt is named as the claimant for reimbursement, and therefore, Britt was not the person aided.

All the evidence tends to show that Britt was the person aided and abetted as alleged in the indictments and that he submitted the invoices with the intent to benefit himself. We find no error.

## Sufficiency of Indictments Under G.S. 14-254

"No indictment, whether at common law or under a statute, can be good if it does not accurately and clearly allege all of the constituent elements of the crime sought to be charged. Nothing in GS 15-153 or in GS 15-155 dispenses with the requirement that the warrant or indictment charge all the essential elements of the offense." (Footnotes omitted.)

7 Strong's N.C. Index 3d, Indictment and Warrant, § 9, p. 125.

G.S. 14-254 (as enacted at the time of the alleged offenses) provided:

"§ 14-254. *Malfeasance of corporation officers and agents.* —If any president, director, cashier, teller, clerk or agent of any corporation shall embezzle, abstract or willfully misapply any of the moneys, funds or credits of the corporation, or shall, without authority from the directors, issue or put forth

any certificate of deposit, draw any order or bill of exchange, make any acceptance, assign any note, bond, draft, bill of exchange, mortgage, judgment or decree, or make any false entry in any book, report or statement of the corporation with the intent in either case to injure or defraud or to deceive any officer of the corporation, or if any person shall aid and abet in the doing of any of these things, he shall be guilty of a felony, and upon conviction shall be imprisoned in the State's prison for not less than four months nor more than fifteen years, and likewise fined, at the discretion of the court."

[6]   To support convictions for willful misapplication of corporate moneys, the indictments must allege an accompanying intent to injure, defraud, or deceive *an officer of the corporation.* Here, the indictments allege an intent "to defraud or to deceive the said Housing Authority of the City of Lumberton, North Carolina." They do not comply with the statutory requirement of G.S. 14-254 and must be quashed. *See State v. Perry,* 291 N.C. 586, 231 S.E. 2d 262 (1977); *State v. King,* 285 N.C. 305, 204 S.E. 2d 667 (1974).

## Reading of Indictments

[7]   Defendant assigns as error the trial court's reading of the indictments to the jury before and during trial.

G.S. 15A-1213 provides:

"§ 15A-1213. *Informing prospective jurors of case.* — Prior to selection of jurors, the judge must identify the parties and their counsel and briefly inform the prospective jurors, as to each defendant, of the charge, the date of the alleged offense, the name of any victim alleged in the pleading, the defendant's plea to the charge, and any affirmative defense of which the defendant has given pretrial notice as required by Article 52, Motions Practice. The judge may not read the pleadings to the jury."

"The purpose of the statute, when read as a whole and considered together with the Official Commentary, apparently is to avoid giving jurors 'a distorted view of the case' through the 'stilted language of indictments.'" *State v. Laughinghouse,* 39 N.C. App. 655, 657, 251 S.E. 2d 667, 668, *appeal dismissed,* 297 N.C. 615 (1979).

In *Laughinghouse, supra,* the trial court had read a portion of the indictment to the jury as a part of his charge after the close of the evidence. We found no violation of G.S. 15A-1213, because we felt that it would not serve the statutory purpose. In the instant case, the trial court read the indictments not only while giving his charge, but also at the very beginning of the trial. Thus, the very evil sought to be prevented was furthered, *i.e.,* giving the jury a distorted view of the case through the stilted language of the indictments. This was prejudicial error.

### Statement of Belief

[8] The trial court erred in preventing defendant from eliciting Britt's testimony that he regarded the money "justly due him." It was manifestly competent to show the absence of felonious intent to defraud on the part of defendant. *Cf. State v. Jessup,* 181 N.C. 548, 106 S.E. 833 (1921).

### Election of Charges

[9] Defendant next assigns as error the trial court's refusal to require the State to elect between the charges of aiding and abetting the obtaining of property by false pretenses and charges of malfeasance by a corporate officer.

The trial court was not required to make the State elect between the charges contained in the indictments at the beginning of the trial and before any evidence had been introduced. *State v. Summrell,* 282 N.C. 157, 192 S.E. 2d 569 (1972). Nevertheless, the question becomes whether the trial court should have required an election later.

The essence of defendant's argument is a plea of double jeopardy. Unless each statute requires proof of an additional fact which the other does not, the Double Jeopardy Clause prohibits successive prosecutions as well as cumulative punishment. *Brown v. Ohio,* 432 U.S. 161, 53 L.Ed. 2d 187, 97 S.Ct. 2221 (1977); *State v. Birckhead,* 256 N.C. 494, 124 S.E. 2d 838 (1962); *State v. Cannon,* 38 N.C. App. 322, 248 S.E. 2d 65 (1978). Applying the foregoing "additional facts" test, we hold the trial court did not err in denying defendant's motion for an election of charges.

To sustain a conviction of aiding and abetting the obtaining of property by false pretenses, the State was required to show

---

that defendant indicated, encouraged, or assisted William Sammy Britt in the obtaining of the Housing Authority's property by false pretenses. To sustain a conviction for malfeasance of a corporate officer, the State was required to show a willful misapplication of the Housing Authority's moneys, funds, or credits. Each offense required proof of an element not common to the other. They are not *the same both in fact and in law*, and the State was not required to make an election.

Upon review of the record, we are convinced that the trial judge's failure to request another judge to consider defendant's motion for recusation, his allowance of the State's use of undisclosed documents on cross-examination of defendant, and his reading of the bill of indictments to the jury prevented defendant from obtaining a fair trial on the false pretenses offenses. Accordingly, we need not consider defendant's other assignments of error, since they may not reoccur at trial.

The judgments entered are vacated in Case Nos. 78CR5945, 78CR5946, and 78CR5947, and defendant is awarded a

New trial in Case Nos. 78CR5948, 78CR5949, and 78CR5950.

Judges CLARK and ARNOLD concur.